## LILLY *v.* GRAND TRUNK WESTERN RAILROAD CO.

No. 124. Argued December 8, 9, 1942.—Decided January 11, 1943.

482

*Mr. William H. DeParcq*, with whom *Mr. Samuel Cohen* was on the brief, for petitioner.

*Mr. Harold A. Smith*, with whom *Messrs. H. Victor Spike* and *Silas H. Strawn* were on the brief, for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

Petitioner brought this action in an Illinois state court, under the Federal Employers' Liability Act [1] and the Boiler Inspection Act,[2] for personal injuries sustained on February 6, 1937, in the course of his employment as a brakeman in interstate commerce. A general verdict of $32,500 was returned in his favor by the jury, but on appeal the Appellate Court of Illinois for the First District entered judgment for respondent notwithstanding the verdict.[3] The Supreme Court of Illinois refused leave to appeal. We granted certiorari because of the important questions presented in the interpretation of the above-mentioned federal statutes.

Petitioner fell from the top of the locomotive tender while he was pulling a water spout, which was at the side of the track, over the tender's manhole by means of a rod and hook, preparatory to filling the tender's tank with water. As to the circumstances of the accident, petitioner testified that the top of the tender between the water manhole and the fuel space, an area of some six square feet, was covered with ice; that there was a small leak at the collar of the manhole from which water flowed onto the tender's surface; that the rod, used for pulling the water spout over the tender, was frozen in the ice, and he had to kick it free; that he stood on the ice and braced himself as he reached out with the rod to pull the spout; and that as he pulled, the rod's hook slipped on the spout, and his feet simultaneously slipped on the ice, causing him to fall to the ground.

Petitioner's complaint charged negligence generally with respect to the presence of ice on the tender and also

---

[1] 45 U. S. C. §§ 51 et seq.

[2] 45 U. S. C. §§ 22 et seq.

[3] 312 Ill. App. 73, 37 N. E. 2d 888.

alleged as separate violations of the "Federal Safety Appliance Act" (more properly the Boiler Inspection Act), first that respondent used "a locomotive and tender which was in improper condition and unsafe to operate in the service, and its condition constituted unnecessary peril to life and limb in that . . . the top where the plaintiff was required to work was slippery and covered with ice and other slippery materials to endanger his life or limb, and the tender leaked there, . . .," and secondly that respondent used "a locomotive and tender which was in improper condition and unsafe to operate in the service, and its condition constituted unnecessary peril to life and limb, in that the . . . tender . . . at the part where the water is supplied . . . to be [sic] cracked, worn and split, so as to occasion and permit the leaking of water from and through this crack, . . . rendering it likely and liable for the water to freeze and cause a dangerous condition, . . ." [4]

When the jury rendered its general verdict for petitioner, it also answered in the negative the following special interrogatory submitted by respondent:

"Was there, at the time of the accident in question, a leak in or near the manhole collar on the tender in question?"

Respondent then moved for judgment notwithstanding the verdict, on the ground that the answer to the special interrogatory removed all question of violation of the Boiler Inspection Act from the case, that there was no evidence of negligence, and that in any event petitioner assumed the risk. The trial court denied this motion, but on appeal it was held well taken in all respects.

---

[4] At the close of his case, petitioner voluntarily dismissed two additional counts charging general negligence in supplying a defective rod and hook, and general negligence in supplying a defective water spout.

For our purposes the case resolves into two questions: (1) Granting, as the jury found, that the tender did not leak, could the jury nevertheless find that the Boiler Inspection Act was violated by the presence of ice on the tender's top; and (2) Was the jury properly instructed that it might so find? We believe that both questions should be affirmatively answered and that the judgment below should be reversed.

The Boiler Inspection Act (§ 2) provides:

"It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 28, 29, 30, and 32 and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for." 45 U. S. C. § 23.

Negligence is not the basis for liability under the Act. Instead, it "imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate . . . without unnecessary peril to life or limb." *Southern Ry. Co.* v. *Lunsford,* 297 U. S. 398, 401; *Baltimore & Ohio R. Co.* v. *Groeger,* 266 U. S. 521; cf. *Brady* v. *Terminal Railroad Assn.,* 303 U. S. 10. Any employee engaged in interstate commerce who is injured by reason of a violation of the Act may bring his action under the Federal Employers' Liability Act, charging the violation of the Boiler Inspection Act. *Moore* v. *C. & O. Ry. Co.,* 291 U. S. 205, 210–211; *Great Northern Ry. Co.* v. *Donaldson,* 246 U. S. 121; *Baltimore & Ohio R. Co.* v. *Groeger, supra.*

The Act, like the Safety Appliance Act, is to be liberally construed in the light of its prime purpose, the protection of employees and others by requiring the use of safe equipment. Cf. *Great Northern Ry. Co.* v. *Donaldson, supra; St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 210 U. S. 281, 295–96; *Louisville & Nashville R. Co.* v. *Layton,* 243 U. S. 617, 621; *Swinson* v. *Chicago, St. P., M. & O. Ry. Co.,* 294 U. S. 529, 531. And, the Interstate Commerce Commission is broadly authorized to set the standards of compliance by prescribing "rules and regulations by which fitness for service [of locomotives, tenders and their appurtenances] shall be determined," *Napier* v. *Atlantic Coast Line,* 272 U. S. 605, 612, provided that, it has been said, the Commission finds such are required to remove unnecessary peril to life or limb. *United States* v. *B. & O. R. Co.,* 293 U. S. 454; cf. *Southern Ry. Co.* v. *Lunsford, supra.* With these considerations in mind, we turn to the first question.

The use of a tender, upon whose top an employee must go in the course of his duties, which is covered with ice seems to us to involve "unnecessary peril to life or limb"—enough so as to permit a jury to find that the Boiler Inspection Act has been violated. Fortunately, we are not left wholly to our own resources in construing the Act in the light of its humanitarian purpose. The Interstate Commerce Commission has set the standard here by promulgating a rule (No. 153) that the "Top of tender behind fuel space shall be kept clean, and means provided to carry off waste water." [5] From the phrasing of Rule 153 we think it aimed at requiring the top of the tender

---

[5] The full text of Rule 153 follows:

"153. Feed water tanks.—(a) Tanks shall be maintained free from leaks, and in safe and suitable condition for service. Suitable screens must be provided for tank wells or tank hose.

(b) Not less frequently than once each month the interior of the tank shall be inspected, and cleaned if necessary.

to be kept free of foreign matter which would render footing insecure, for example, coal, dust, debris, grease, waste water, and ice. While the locomotive inspection rules are generally devoted to details of construction and specification of materials, at least one other rule deals with the condition of surfaces upon which employees must stand.[6] In using the word "clean," the Commission must have meant something more than mere manner of construction or mechanical operation, because "clean" does not naturally lend itself to such a limited connotation. That something more is the continuing duty of promoting the safety of employees by removing from the top of the tender all extraneous substances which might make standing there hazardous.

From various cases denying recovery under the Act, respondent attempts to extract a general rule that the Act covers only defects in construction or mechanical operation and affords no protection against the presence of dangerous objects or foreign matter.[7] But there is no

---

(c) Top of tender behind fuel space shall be kept clean, and means provided to carry off waste water. Suitable covers shall be provided for filling holes."

See Official Pamphlet of Interstate Commerce Commission, Bureau of Locomotive Inspection, Orders dated October 11, 1915, to February 21, 1929; Roberts, Federal Liabilities of Carriers (2d ed.) vol. 2, p. 2069.

[6] Rule 117 provides:

"117.  Cab aprons.—Cab aprons shall be of proper length and width to insure safety. Aprons must be securely hinged, maintained in a safe and suitable condition for service, and roughened, or other provision made, to afford secure footing."

See Official Pamphlet, *supra*, and Roberts, *op. cit.*, p. 2062.

[7] *Ford* v. *N. Y., N. H. & H. R. Co.*, 54 F. 2d 342 (grease on a locomotive grab-iron held no violation of Safety Appliance and Boiler Inspection Acts); *Reeves* v. *Chicago, St. P., M. & O. Ry. Co.*, 147 Minn. 114, 179 N. W. 689 (presence of coal upon a step leading to the locomotive cab held no violation of Safety Appliance and Boiler Inspection Acts); *Slater* v. *Chicago, St. P., M. & O. Ry. Co.*, 146

warrant in the language of the Act for construing it so narrowly, or for denying the Commission power to remedy shortcomings, other than purely mechanical defects, which may make operation unsafe. The Act without limitation speaks of equipment "in proper condition and safe to operate . . . without unnecessary peril to life or limb." Conditions other than mechanical imperfections can plainly render equipment unsafe to operate without unnecessary peril to life or limb. Whatever else may be said about the cases relied upon by respondent, they are sufficiently distinguishable in that they either did not involve or did not consider Rule 153 or any comparable regulation.

Respondent insists that reliance cannot be placed on Rule 153 because it was not called to the attention of the trial court or the jury and its injection now would involve deciding the case on issues not submitted to the jury. We do not regard this point as well taken. No claim is advanced that the rule is invalid, and we see no reason for questioning it. Adopted in the exercise of the Commission's authority, Rule 153 acquires the force of law and becomes an integral part of the Act (cf. *Napier* v. *Atlantic Coast Line, supra; United States* v. *B. & O. R. Co., supra*), to be judicially noticed. *Caha* v. *United States,* 152 U. S. 211, 221–22. The failure of petitioner's counsel to call

Minn. 390, 178 N. W. 813 (holding no cause of action under Safety Appliance Act for injuries caused by an ice bunker displaced by a trespasser so it projected upon the running board); *Chicago, R. I. & P. Ry. Co.* v. *Benson,* 352 Ill. 195, 185 N. E. 244 (Safety Appliance Act held not violated by wrapping wire around grab-irons); *Harlan* v. *Wabash Ry. Co.,* 335 Mo. 414, 73 S. W. 2d 749 (failure of fellow employees to close a trap door in the cab over the stoker held no violation of the Boiler Inspection and Safety Appliance Acts); *Riley* v. *Wabash Ry. Co.,* 328 Mo. 910, 44 S. W. 2d 136 (holding no cause of action existed under Boiler Inspection Act for injuries sustained because a clinker hook was misplaced on a tender top by a fellow servant).

Rule 153 to the attention of the trial court should no more deprive petitioner of its benefits than the failure to plead specifically the Federal Employers' Liability Act foreclosed the application of that Act on appeal to test the correctness of the trial judge's refusal to charge in *Grand Trunk Western Ry. Co.* v. *Lindsay*, 233 U. S. 42, especially when, as here, the rule only fortifies a result which we think the jury could probably have reached even in the absence of such a rule.

Concluding that the jury had a right to find a violation of the Boiler Inspection Act by reason of the presence of ice on the top of the tender even though there was no leak, we turn now to the second question: Was the jury properly instructed that it might so find? The court below held and respondent here earnestly insists that with regard to the Boiler Inspection Act the case was tried solely on the theory that the only violation of that Act charged was that the tender leaked, and the answer to the special interrogatory therefore removed all question of violation of the Act from the case. This was not the view of the trial judge, and, while the record is not as satisfactory as we might wish, we agree with him.

It is true that both charges of violation of the Act do allege the presence of a leak, and petitioner's counsel did say in his closing argument to the jury "So, as I say, gentlemen, don't find that there was no leak, or you put him (petitioner) out of court." But there is no reason to penalize petitioner for remarks of counsel uttered in an excess of zeal, and the full text of the complaint is such that it is fair to say that the presence of a leak was vital to only one charge of violation of the Act, being merely an incidental, nonessential allegation of the other.[8] · This

---

[8] Thus, while a leak is alleged in paragraph 4 (d) of the complaint, the full text makes it clear that the gist of the charge is simply the presence of ice:

"d. Defendant did then and there unlawfully and contrary to the Federal Safety Appliance Act use and permit to be used on its line of

was the understanding of the trial judge, upon whom rests primarily the function of interpreting the pleadings. For, in overruling respondent's motion for judgment notwithstanding the verdict, the trial judge said: "Now, whether there was a crack or not, yet still the question of the Safety Appliance [Boiler Inspection Act] could remain in there if the Court did feel that it was the duty of

---

railway at Ferndale Yard a locomotive and tender which was in improper condition and unsafe to operate in the service, and its condition constituted unnecessary peril to life and limb in that the defendant required, caused and permitted plaintiff to work on the tender of the locomotive of his train on the occasion above charged, in the act of putting water in the tender of the locomotive, this tender was unsafe because the top where the plaintiff was required to work was slippery and covered with ice and other slippery materials to endanger his life or limb, and the tender leaked there, and while he was so at work, as above charged, he slipped on this slippery and unsafe condition on top of the tender and was thrown and caused to fall and be seriously injured."

On the other hand, the essence of Paragraph 4 (e) is the presence of a leak, as the following full quotation shows:

"e. Defendant did then and there unlawfully and contrary to the Federal Safety Appliance Act use and permit to be used on its line of railway at Ferndale Yard, Michigan, a locomotive and tender which was in improper condition and unsafe to operate in the service, and its condition constituted unnecessary peril to life and limb, in that the defendant did operate this locomotive and tender with the tender of this locomotive at the part where the water is supplied to and poured into the locomotive to be cracked, worn and split, so as to occasion and permit the leaking of water from and through this crack, hole and aperture and to flood, seep and cover the top of the tender where plaintiff was required to be in the performance of his duties as employee, rendering it likely and liable for the water to freeze and cause a dangerous condition, and thereby, by reason of this violation on the part of the defendant of this Federal Safety Appliance Act, the water in this tender did leak through this defective place onto the top of the tender, and did freeze, and it thereby caused plaintiff, while he was so at work, as above charged, on the top of this tender, to slip and be thrown and seriously injured."

the defendant to keep the tender clear so that the man might operate."

In his instructions to the jury, the judge read the Boiler Inspection Act and stated:

"You are instructed that under the law the defendant was bound to furnish to the plaintiff a locomotive, at the time in question, which was safe to be used, and to keep and maintain the same in such condition at all times so as not to expose the plaintiff to any hazard or risk."

Respondent took no exception. We think this charge sufficiently informed the jury that it could find a violation of the Act from the presence of ice, even if there were no leak. Evidently this was the understanding of the jury, because it found nothing incongruous in simultaneously answering the special interrogatory negatively and returning a general verdict for petitioner despite counsel's statement that a finding of no leak would put his client out of court.

Since petitioner's injuries were the result of respondent's violation of the Boiler Inspection Act, the partial defense of contributory negligence and the bar of assumption of risk are not available to respondent under §§ 3 and 4 of the Federal Employers' Liability Act, 45 U. S. C. §§ 53, 54, as those sections existed at the date of the accident. This disposition of the case makes it unnecessary to consider either whether respondent was generally negligent, or the merits of petitioner's contention, based on the premise that respondent was so negligent, that the 1939 amendment to § 4 of the Federal Employers' Liability Act, 53 Stat. 1404, completely abolishing the defense of assumption of risk in actions under that Act, should be given retroactive application.

Under the facts of this case and the applicable law, the jury could rightfully find for petitioner. The benefits of that rightful determination should not have been taken from him.

The judgment below is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE FRANKFURTER concurs in the result.