# Wythebille

NELLIE FAŸE BEAMER, ADMINISTRATRIX OF THE ESTATE OF
ROBERT P. BEAMER, DECEASED V. THE VIRGINIAN
RAILWAY COMPANY, ETC.

June 14, 1943.

Record No. 2681.

Present, Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Robert J. Ashworth*, *D. D. Ashworth* and *J. L. Dillow*, for the plaintiff in error.

*Hall, Nuckols & Hall*, *W. C. Plunkett* and *M. P. Farrier*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Robert P. Beamer, who had been employed by The Virginian Railway Company at its electric generating or power plant, died a short time after having worked in intense heat in the plant for about two and one-half hours. His administratrix instituted an action for his death against the railway company under the Federal Employers' Liability Act. The case was tried by a jury which returned a verdict in favor of the administratrix for $10,000. The motion made to set

aside the verdict was sustained, the verdict set aside and judgment was entered for the railway company upon the sole ground that Mr. Beamer had assumed the risk of his employment which barred any recovery for his death.

The facts are not in dispute in any substantial particular. The railway company, in 1925, electrified its line from Mullins, West Virginia, to Roanoke, Virginia. It employed the firm of Gibbs and Hill, of New York City, to design and construct the electrical system, including a power plant at Narrows, Virginia. This firm is one of the outstanding firms in this field. It has designed, constructed and installed like electrical systems and power plants for several of the larger railroads.

Mr. Beamer was originally employed by Gibbs and Hill as a steam fitter in the construction of this power plant. He was taken over by the railway company when the plant was completed and he had worked in the same capacity for the latter company at this power plant continuously until his death. His services for the entire 15 years had been satisfactory. He was more familiar with the system of pipes in the plant than any other employee.

The plant, which was located on New River, was operated for the purpose of generating electricity used in transporting coal in interstate commerce from West Virginia into Virginia. There were four turbines in the plant and they were heated by steam. The building, housing the plant, was 80 by 150 feet. There was a basement some 35 feet in height, practically all below the level of the ground and below flood level of the river. It was separated in two parts by a solid wall that extended from the floor of the basement to its ceiling. In one part of the basement are the furnaces, boilers, pumps and other machinery. The floor immediately above the basement contained the four turbines and is referred to as the turbine floor. Its ceiling is about 45 feet high. The steam from the boilers in the basement is conveyed by pipes to the generators of the turbines on the turbine floor. The pipes are all covered with asbestos in order to prevent the escape of heat. Those that were being

repaired are located near the ceiling of the basement under the turbines. There are two large openings between the turbines extending from the basement through the turbine floor about 30 feet long and some 18 feet wide.

There are no outside windows in the basement. Its outside walls are of solid concrete. There is an elevator shaft some 6 feet by 8 feet which runs from the bottom of the basement to the turbine floor. The air circulation around the pipes near the basement ceiling was poor and it was very hot. One hour after Mr. Beamer's death the temperature was 132 deg. F. The pipes were dusty.

Turbine No. 1 was not functioning properly and the general foreman directed Mr. Beamer to inspect it, discover and remedy the trouble. He found the trouble in the heater line. A large expansion joint in that line running to the turbine was broken. He reported to the general foreman that it would require more time to repair the joint than it would to replace it with a new joint. If he repaired the joint he would have to work overtime, that is, he would have to work later than 4 P. M., his quitting time. Thereupon the general foreman directed him to get a new joint and install it. This would not require overtime work.

Mr. Beamer and his helper proceeded with the job. To reach the place where the work was to be done he went up a stairway running from the basement floor and climbed on a platform which had been made by laying boards across the pipes. The work was to be done near the ceiling of the basement. The helper reached the platform by removing a panel near turbine No. 1 and descending from the turbine floor through the opening to the platform.

An air hose was available for use by Mr. Beamer to create a better circulation of air and to cool them, but it was not used because there was so much dust on the pipes, which, if stirred by the air from the hose, would have rendered the air unfit to breathe for a considerable time. They worked for nearly two and one-half hours before completing the job. It was finished a short time before 4 P. M. During the work Mr. Beamer and the helper left the

work and went outside to cool on two occasions. This was customary at the plant when men worked in hot places.

After finishing the work Mr. Beamer went down the stairway to the basement floor, came up in the elevator to the turbine floor, walked 150 feet through that room and sat outside for a short time. He then walked some 80 feet to the machine shop where he suddenly expired. The work he had done was not unusual. He had performed like work many times before. He frequently had to go under the turbines to work.

Physicians were called but it was too late. They testified that the heat, in their opinion, was most likely the cause of his death.

It is claimed that the company did not provide a reasonably safe place for Mr. Beamer to work when the repairs were made; that it failed to take the temperature in the place where the work was performed; that no proper inspection of this place was made to ascertain whether there was sufficient circulation of the air at this particular point or whether it was too hot for men to work and that the company failed to have the plant under proper management.

The railway company denied each allegation of negligence. It averred that Mr. Beamer assumed the risks incidental to the employment, and that he assumed the risk of becoming overheated if he failed to observe the necessary precautions for his own protection.

The court, after the verdict, as already noted, was of opinion that as a matter of law Mr. Beamer had assumed the risk of becoming overheated and accordingly entered judgment for the defendant.

The defense of assumption of risk was the principal one. The jury were instructed and the case was tried upon this defense just as though Congress had not enacted the 1939 Amendment (53 Stat. 1404, c. 685, 45 U. S. C. par. 54) to the Federal Employers' Liability Act. This amendment obliterates from the law every vestige of the doctrine of assumption of risk in any case where injury or death results in whole or in part from the negligence of the carrier.

In this respect the case was tried upon a false theory. See *Tiller* v. *Atlantic Coast Line R. Co.* (1943), 318 U. S. 54, 87 L. Ed. (adv. 446), 63 S. Ct. 444, 143 A. L. R. 967, and annotation at page 278. See also, *Lilly* v. *Grand Trunk W. R. Co.* (1943), 317 U. S. 481, 87 L. Ed. (adv. 323), 63 S. Ct. 347, where the court said that the amendment completely abolished the defense of assumption of risk in actions under the act.

■ The fact that the court set aside the verdict upon an erroneous ground will not compel a reversal of the judgment if a correct result has been attained. If the railway company was not remiss in its duty to Mr. Beamer, no judgment against it should be allowed to stand.

■ After the elimination of the defense of assumption of risk there remains but one question for this court to determine and that is whether or not the death of Mr. Beamer resulted in whole or in part from the negligence of the railway company. The jury having found in favor of the administratrix, this court will be compelled to reinstate and affirm the verdict unless, as a matter of law, there was not sufficient evidence of the negligence of the railway company to carry that question to the jury.

The record has been examined with care, the evidence has been considered in a light favorable to the administratrix and the reasonable inferences flowing from the evidence have been accorded her, yet we are unable to conclude that Mr. Beamer's death resulted in whole or in part from the negligence of the railway company.

■ It is disclosed by the evidence that the pipes to be repaired were dusty; that the ventilation around them was poor and that it was very hot. These conditions, however, do not constitute actionable negligence under the circumstances disclosed in this case.

■ It is argued that if the pipes had not been so dusty Mr. Beamer might have used the air hose to provide better circulation of air and to cool himself. The uncontradicted evidence discloses that it was his own duty to blow the dust off the pipes with the air hose.

An action under the Federal Employers' Liability Act against an interstate carrier must be founded upon actionable negligence just as is essential in any other tort action. See *Tiller* v. *Atlantic Coast Line R. Co.*, *supra.* In resolving that question, the court, in the *Tiller case*, states the rule thus:

"In this situation the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done. A fair generalization of the rule is given in the Senate Committee report on the 1939 amendment: 'In justice, the master ought to be held liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances.' Of course in any case the standard of care must be commensurate to the dangers of the business. *Hough* v. *Railway Co.*, 100 U. S. 213, 218; cf. *Northern Pacific Railroad Co.* v. *Herbert*, 116 U. S. 642, 652."

And again, in deciding when such cases should be left to the determination of juries, the *Tiller case* has this to say:

"No case is to be withheld from a jury on any theory of assumption of risk and questions of negligence should under proper charge from the court be submitted to the jury for their determination. Many years ago this Court said of the problems of negligence, 'We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others.' *Jones* v. *Tennessee, etc., Railroad Co.*, 128 U. S. 443, 445. Or as we have put it on another occasion, 'Where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different inferences,' the case should go to the jury."

There is nothing new in the test in the *Tiller case* to determine when a case should go to the jury or when it

should be withheld. For many decades this court has been announcing that disputed questions of fact are for the jury.

Under the Federal Employers' Liability Act, before and after the 1939 amendment, proof of the mere happening of an accident, without more, is not ground for holding a carrier liable. The carrier is not an insurer of the safety of its employees.

There are certain well defined standards or guides, according to the evidence, which indicate proper construction and operation. These standards are arrived at as a result of study and experience. There are many similar plants throughout the country. Many railroads have turned to electricity as the source of power to move its trains and wherever this has occurred, power plants are necessary to generate the electric current. The power plant of the Virginian Railway Company, as disclosed by the uncontradicted evidence, was constructed and operated in accordance with the standards of good practice and usage for such plants. There is an entire absence of any evidence that discloses any other or better type of construction or improved standard of operation.

The experts who testified have spent years in this field and were entirely familiar with plants of this kind. They testified unequivocally that the plant measured up in every respect to the demands of approved standards. No defect in construction or operation was disclosed. From the standpoint of construction and operation, the railway company was free of negligence.

We also conclude that the railway company was not negligent in sending Mr. Beamer to work on the heat line under the turbine when it was very hot there and the pipes were covered with dust. This was a reasonably safe place for him to work under existing circumstances.

The evidence fails completely to show that the dust contributed to the death of Mr. Beamer. From the evidence it reasonably may be concluded that he died from becoming overheated. It is true it was very hot and the ventilation poor, but according to the testimony of the experts, which

has not been contradicted, the excessive heat was necessary for the efficient operation of the turbines. The installation of windows in the wall at or near the pipes which were being repaired for ventilation and air would have reduced the temperature and, accordingly, would have reduced the efficiency of the plant. It was not feasible to install windows for the additional reason that, during high water, the river water would flow through them into the basement which was practically below flood level.

▪ The railway company was only required to exercise ordinary care in furnishing a safe place for Mr. Beamer to work. Mr. Beamer had worked in the same place on many occasions doing the same kind of work he was engaged in just prior to his death. He knew the place was hot. The efficiency of the plant could not have been maintained and the heat eliminated. Employees are often called upon to work in places that are hot and dusty. It was not hotter where Mr. Beamer was working than is required by standards of good practice for such plants.

The other allegations of negligence were either not sustained by the evidence, or were not the proximate cause of the death of Mr. Beamer.

The judgment is affirmed.

*Affirmed.*