**Clark LUKE, Plaintiff,**

v.

**The PENNSYLVANIA RAILROAD COMPANY, a corporation, Defendant.**

**Civ. A. No. 13285.**

United States District Court
W. D. Pennsylvania.

Aug. 16, 1962.

Brandon & Shearer, Pittsburgh, Pa., for plaintiff.

Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., for defendant.

DUMBAULD, District Judge.

In this case plaintiff, who received a $25,500.00 verdict in a two-fold cause of action under legislation for the protection of railway employees, seeks a new trial upon the ground that the Court erred in failing to charge the jury to the effect that violation of an Interstate Commerce Commission regulation issued pursuant to the Boiler Inspection Act is *per se* a violation of the Act itself.

The Court took judicial notice of Regulation 247(a) providing that "Jumpers or cable connections between locomotives or units shall not be allowed to hang with one end free." The Court went on to say, in the allegedly erroneous portion of the charge: "So, if you find that there was a violation of that regulation by reason of the separation of this dynamic brake cable between the units, and if you find that that defect was one which rendered the locomotive unsafe to operate in the

service to which it was put, that it could not be employed in such service without unnecessary peril to life or limb, then you may find for the plaintiff without regard to the issue of negligence at all on the part of the railroad or any of its employees." (Tr. 45–46).

In support of the contention that violation of a regulation is a *per se* violation of the statute, plaintiff cites Givens v. M-K-T R. R. Co., 195 F.2d 225, 229 (C.A. 5, 1952), where the court said: "The Interstate Commerce Commission has promulgated a number of particular minimal requirements under the Boiler Inspection Act. A violation of any of such particular requirements is a violation of the Boiler Inspection Act." For this statement the court cites Lilly v. Grand Trunk R. R. Co., 317 U.S. 481, 488, 63 S.Ct. 347, 87 L.Ed. 411 (1943). Plaintiff also relies on Napier v. Atlantic Coast Line, 272 U.S. 605, 612, 47 S.Ct. 207, 71 L.Ed. 432 (1926).

█ If the quoted passage of the Court's charge is erroneous, the error was cured by the verdict. Plaintiff admits that this would be so if the case had been one involving only the second accident, involving the cause of action under the Boiler Inspection Act.

But plaintiff argues that inasmuch as the case also involves a prior accident under the Federal Employers' Liability Act, the entire award of $25,500.00 may possibly be regarded as reflecting only the jury's evaluation of the earlier accident, while in reliance upon the allegedly erroneous instruction nothing at all was awarded by the jury for the second accident.

The ingenuity and cogent presentation of this argument is characteristic of the industrious zeal and resourceful acumen with which plaintiff's able counsel has championed his client's cause.

But in the light of the facts as developed in the record of the case, this argument is altogether speculative and unsound.

The testimony shows that plaintiff was first injured on December 21, 1956, when he was riding in an engine pushing several cars around a curve in a switching movement. They collided with some other cars at the other end of the train from where plaintiff was riding. He was on the other side of the train where he could have seen nothing and could have done nothing to avoid the crash. His freedom from contributory negligence and the negligence of other railroad employees were plain. Plaintiff braced himself with his right foot but was thrown from his seat in the cab. He did not lose any time from work as a result of this injury. For four days he took heat treatments, but continued to experience pain in the hip until an operation by Dr. Harry B. Orringer in 1960, after the second accident, gave relief to an entrapped sciatic nerve. But as previously stated, plaintiff continued to be able to work regularly up to the date of the second accident on August 13, 1959.

On that occasion he was employed on a locomotive consisting of two Diesel units. A "dynamic brake cable" connecting the two units had become disconnected several times, and finally it was necessary to shut off the rear unit as a source of motive power. Plaintiff while endeavoring to re-establish the connection the first time it failed was standing on "safety chains" between the two units. When he came down, one foot missed the lower chain, and the extra weight on the other foot "snapped something." Plaintiff continued at his job until the end of the run, but has never worked since.

There was considerable conflict in the medical testimony regarding plaintiff's condition. The existence of a herniated disc was negatived by Dr. Orringer's testimony based on the report of another doctor who operated on plaintiff. (Tr. 114). Plaintiff's case rested upon Dr. Orringer's diagnosis of "lumbosacral instability" (Tr. 123). This diagnosis was principally based upon plaintiff's subjective complaints. On the other hand Dr. Markle diagnosed plaintiff's trouble as "functional anxiety state; questionable lumbo-sacral instability" (Tr. 185). Dr. Markle on the witness stand explained that he included the reference to the

"questionable" condition merely because of the "impressions" recorded by other doctors, whose views he had "no other way of acknowledging." (Tr. 187). Dr. Markle clearly believed that plaintiff's condition was mental and not physical.

We do not regard plaintiff's $25,500.00 verdict as insignificant in amount. It is a substantial verdict. It is not "peanuts". Our conscience is not shocked by its inadequacy. Rather it seems to reflect the effect of the jury's evaluation of the medical testimony, and indicates that the jury gave what it considered proper effect to the conflicting views of the expert witnesses involved.

If $25,500.00 is not thought to be a sufficiently large verdict, the reason doubtless is that the jury did not find plaintiff's case as convincing as it might have. The verdict reflects the jury's conclusions with respect to the weight of the evidence in the record rather than complete rejection of plaintiff's cause of action based on the second accident in reliance upon the allegedly erroneous instruction of the Court.

It seems quite clear that the jury was granting plaintiff what it considered to be an appropriate measure of damages for both injuries, and that necessarily in this connection it made both of the findings required by the Court's allegedly erroneous charge, namely not only that there was a violation of the Interstate Commerce Commission rule but also that in consequence thereof the locomotive was unsafe to operate in the service to which it was being put and could not be employed in such service without unnecessary peril to life or limb. (This language, incidentally, is simply the wording of the Boiler Inspection Act itself, 45 U.S.C.A. § 23). As the Court correctly pointed out to the jury the duty under this section creates an absolute statutory duty, to which contributory negligence is no defense; and negligence is not the basis of the action. Lilly v. Grand Trunk Railroad Co., 317 U.S. 481, 485, 63 S.Ct. 347, 87 L.Ed. 411 (1943).

The supposition that the jury awarded nothing for the second accident, by reason of the Court's alleged error, is altogether speculative and utterly untenable. The jury awarded plaintiff all that it thought he was entitled to, by virtue of both accidents, in accordance with its evaluation and weighing of the evidence in the record.

Accordingly we conclude that plaintiff's motion for a new trial is without merit and should be denied.