**MISSOURI PACIFIC RAILROAD CO. d/b/a Union Pacific Railroad Co., Appellant,**

v.

**George BROWN, Appellee.**

**No. 12–91–00182–CV.**

Court of Appeals of Texas,
Tyler.

May 28, 1993.

Opinion Denying Rehearing July 6, 1993.

E. Lawrence Merriman, Longview, for appellant.

Ernest Swift, Palestine, Jim Foreman, Dallas, for appellee.

Before BILL BASS, HOLCOMB and COLLEY,[1] JJ.

HOLCOMB, Justice.

This is an appeal from a judgment on a jury verdict in a suit for damages brought under the Federal Employers' Liability Act ("FELA"), 45 U.S.C.A. § 51 *et seq.*, and the Boiler Inspection Act, 45 U.S.C.A. § 22 *et seq.* We will affirm.

George Brown worked for the Missouri Pacific Railroad (hereafter "MOPAC") as a brakeman and had worked for the railroad for many years. Over the years, he developed lung problems, mostly associated with his smoking habit. In performing his duties with MOPAC, Brown rode in the caboose of freight trains. A few years before Brown stopped working for MOPAC, the railroad phased out the use of the cabooses and required the brakemen to ride in the cabs of the engine units. Sometimes there was room for all the crew in the forward unit, but at other times crewmen, other than the engineer and fireman, had to ride in the trailing units of the engine consist.[2] In these trailing units the crewmen were subjected to diesel fumes from the engines that were in front of them. There is evidence that Brown's lung problems became aggravated by the fumes, forcing him to stop working for MOPAC.

Brown sued to recover damages for the injury to his lungs from having to inhale the diesel fumes. The jury found that the injury to Brown's lungs was aggravated by the diesel fumes and that by this aggravation of his lung problems he had suffered damages of $184,000. The jury found that Brown was 70% responsible and MOPAC 30% responsible for the damages. But the jury also found

---

1. Paul S. Colley, Justice (Retired), Tyler Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988).

2. The railroad uses the term "engine consist" to describe the several engine units that are connected together as one integrated source of power to drive the train.

that MOPAC had failed to comply with the Boiler Inspection Act, 45 U.S.C.A. § 23, thus subjecting MOPAC to strict liability.

MOPAC now brings three points of error, arguing that the evidence of subsequent remedial measures was improperly admitted and that the jury questions applying the Boiler Inspection Act should not have been submitted in the jury charge.

█ By its third point MOPAC argues that a report of certain remedial measures to reduce smoke at the cabs of the trailing units in engine consists should not have been admitted. On several occasions MOPAC objected when Brown indicated that he would offer the report into evidence. However, on the occasion in which the report was finally offered, MOPAC made no objection. That was the only time at which the objection was important and having failed to object, MOPAC has waived error on appeal. The point of error is overruled.

█ By its first two points of error, MOPAC argues that the Boiler Inspection Act does not apply to this case because each unit in a consist is to be considered separately. That is, if Brown was in the second unit, he had to show that he was injured by smoke and fumes from the second unit which entered the cab, no matter how much exhaust from a forward unit entered the cab of the trailing unit he was in. The issue is critical to the railroad because the Boiler Inspection Act, 45 U.S.C.A. § 23, "imposes on the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate in active service without unnecessary peril to life or limb." *Southern Ry Co. v. Lunsford,* 297 U.S. 398, 401, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936). If the Act applies, MOPAC is strictly liable for Brown's damages. If it does not, the contributory negligence provisions of FELA, 45 U.S.C.A. § 53, apply and MOPAC is only 30% liable for the damages. *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

█ MOPAC does not attack the finding of causation or the extent of damages; only the issue of the application of 45 U.S.C.A. § 23 is before this Court. Therefore, in determining the application of federal common law to a federal issue we are bound by federal decisional law. *Dice v. Akron, Canton & Youngstown R. Co.,* 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952); *Mitchell v. Missouri–Kansas–Texas R. Co.,* 786 S.W.2d 659, 661 (Tex.1990). Further, rules adopted by the Interstate Commerce Commission, in the exercise of authority under 45 U.S.C.A. §§ 22–34, acquire the force of law and become integral parts of the sections. *Lilly v. Grand Trunk Western R. Co.,* 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411 (1943). The rule adopted by the Federal Railroad Administration of the United States Department of Transportation, and incorporated into the jury charge reads:

*Exhaust and Battery Gases*

(a) Products of combustion shall be released entirely outside the cab and the compartments. Exhaust stacks shall be a sufficient height or other means provided to prevent entry of products of combustion into the cab or other compartments under usual operating conditions.

49 C.F.R. § 229.43. The Boiler Inspection Act and the rules promulgated to enforce it should be liberally construed in light of its primary purpose, which is the protection of employees and others by requiring the use of safe equipment. *Lilly v. Grand Trunk Western R. Co.,* 317 U.S. at 486, 63 S.Ct. at 351.

█ The evidence admitted at trial reveals that smoke from lead units of the consist usually entered the trailing units and that smoke from trailing units sometimes entered those trailing units, depending on the arrangement of that unit. That is, if a trailing unit was "cab forward" its smoke did not enter its cab, but if it was "cab trailing" its smoke did enter its cab. Brown testified that:

[I]f the second unit was turned where its nose was next to the lead unit, it had less fumes and smoke. You had the fumes and smoke from just the one engine in front of you instead of the one you were riding on because it would be behind you.

MOPAC argues that this is no evidence that smoke from trailing units entered trailing

cabs in violation of the regulation. MOPAC also argues that each unit is treated separately by the regulation. In support of this argument MOPAC has produced a letter from Gregory B. McBride, the Assistant Chief Counsel for Safety for the Federal Railroad Administration indicating that the administrative interpretation of the rule is that it applies "to situations in which combustion gases enter 'the cab' of the locomotive actually releasing the exhaust fumes." [3] MOPAC argues that an administrative interpretation is to be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). MOPAC argues that this letter was used by a federal district judge in the District of Nebraska to grant a defendant railroad partial summary judgment on facts similar to this case. An interlocutory, unreported decision of a federal district court is not binding on this Court under the rule of *Dice v. Akron, C. & Y. R. Co.* The current Section 229.43 is the product of a 1980 consolidation of earlier regulations. These older regulations preceded the removal of cabooses from trains and the placing of brakemen in areas previously designated 'enginemen's compartments.' McBride's letter details an interpretation that would comprehend neither additional crewmen on an engine consist or crewmen riding in a compartment other than the "enginemen's compartment." The interpretation urged by MOPAC fails to consider that crewmen would be in other parts of the consist or that smoke and fumes would need to be kept out of trailing units. This is a plainly erroneous interpretation of a regulation promulgated under a statute designed to protect not only the operators but the public at large. *Urie v. Thompson*, 337 U.S. 163, 191, 69 S.Ct. 1018, 1035, 93 L.Ed. 1282 (1949); *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). The BOILER INSPECTION ACT is to be liberally construed to protect railroad employees. We observe that the "operating locomotive" is not just one of the units in the consist but all of the units in the consist. The engineer has

control over all of the units and they operate together. That they operate together is the important fact, not that they may be disconnected. The railroad treats several units connected together as "*AN* engine consist" and as such the consist must meet the statutory requirement to be safe to operate in active service without unnecessary peril to life or limb.

Therefore, we find that there was evidence that the engine consists were not safe to operate in the service to which the same were put without unnecessary peril to life or limb in violation of the Boiler Inspection Act. The trial court properly allowed the questions as part of the jury charge.

The judgment of the trial court is affirmed.

## OPINION ON MOTION
## FOR REHEARING

■ Appellant directs this Court's attention to the fact that the decision of the Federal District Court in Nebraska has been published as *Dixon v. Burlington Northern Railroad Co.*, 795 F.Supp. 939 (D.Neb.1992). It is still an unappealable interlocutory order and it is limited to persuasive, not precedential, force. The motion for rehearing is denied.

---

**3.** The trial court would not allow the letter in evidence or consider it as an explanation of the law because MOPAC could not convince the

court that it represented the authorized positions of the United States Department of Transportation.