JOHNSON, Circuit Judge,
dissenting:
The Boiler Inspection Act (BIA) was promulgated by Congress for the purpose of promoting safety for railroad employees and the public. Lilly v. Grand Trunk Western RR Co., 317 U.S. 481, 485, 63 S.Ct. 347, 350, 87 L.Ed. 411 (1943). Section 23 of the BIA makes it
... unlawful for any railroad to use or permit to be used on its line any locomotive unless said locomotive, its boiler, ten *167 der, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such railroad without unnecessary peril to life or limb ...
45 U.S.C. § 23. While recognizing this more general requirement, the Supreme Court and this Court have additionally made clear that violating any rules and regulations promulgated by the Department of Transportation will constitute more specific violations of the BIA. See Lilly, 317 U.S. at 488, 63 S.Ct. at 352; Givens v. Missouri-Kansas-Texas R. Co. of Texas, 195 F.2d 225, 228 (5th Cir.1952) (contrasting the instances where specific and definite violations of the BIA may occur, creating liability as a matter of law [much like specific and definite violations of the Safety Appliance Act], with the more general violations, creating jury issues). Lilly made clear that all Department of Transportation rules and regulations have the same force and authority as law. Lilly, 317 U.S. at 488, 63 S.Ct. at 352. Thus, a violation of a Department of Transportation regulation constitutes a violation of the BIA per se. See id.
Department of Transportation Regulation 43 C.F.R. § 229.119(e) clearly states that the “[flloors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard.” 43 C.F.R. § 229.119(c). Interpreting this regulation according to its plain meaning, the regulation prohibits the presence of the specific substances of oil, water, and waste and then goes on to make a more general prohibition of any other obstruction that creates a slipping, tripping, or fire hazard. See id. The undisputed evidence in this ease establishes that there was an 18” by 8” conglomeration of oil on the passageway of the train when Mr. Gregory slipped. (R. Ill, 406-07). The presence of this oil violates the regulation, and in turn the BIA, on its face, thereby rendering the trial judge’s instruction fully appropriate.
The majority holds Gregory’s argument that the BIA combined with 49 C.F.R. § 229.119 creates a strict duty on the part of railroads to keep their floors free of oil is an issue that the Court cannot consider. They reach this conclusion first, on the basis that Gregory is estopped from making such an argument on the ground that he took an inconsistent position in the district court.[1] Second, the majority presumes the district court was operating under the assumption that unnecessary peril to life or limb is an absolute prerequisite to any BIA violation. However, the fact that Gregory and the trial court may have referred to the hazard produced by the oil is not inconsistent with the position that violation of the Department of Transportation regulation results in strict liability under the BIA. Certainly, as the majority points out, a prime concern of the BIA was the prevention of unnecessary peril to the life and limb of its employees. This is precisely why Congress gave the Department of Transportation full legal authority to promulgate rules and regulations for the railroads. Additionally, this concern with personnel security is why Congress backed the Department of Transportation’s authority with strict liability under the BIA. While strict liability statutes may be highly controversial, this Court and the Supreme Court have recognized their need and constitutionality. See, i.e., Gollust v. Mendell, 501 U.S. 115, 122, 111 S.Ct. 2173, 2178, 115 L.Ed.2d 109 (1991); United States v. West of England *168 Ship Owner’s Mutual Protection & Indemnity Ass’n, 872 F.2d 1192, 1198 (5th Cir.1989). When Congress acts or authorizes such a strict liability statute for the protection of a specified group, it is the duty of this Court to support it in that decision.
Today the majority seeks to establish a defense where Congress intended there be none. As the majority recognizes, there is likely to be water and/or oil on trains due to a variety of reasons. Congress and the Department of Transportation also recognize this tendency through the BIA .and Regulation 49 C.F.R. § 229.119. They both also recognize that because of such conditions and the great dangers these conditions can present to railroad employees, the railroads have an absolute duty to either rectify such problems or cease operation of the train until such problems cease.
Accordingly, this dissent is respectfully tendered.

. The stringent consistency required of Gregory by the majority is itself inconsistent with laxity granted by the majority to MOPAC in the way of appellate preservation requirements. The majority is willing to exercise every benefit of the doubt in favor of MOPAC in holding its vague and disjointed objection to be specific enough to preserve error. See Majority Opinion at Note 5. Federal Rule of Civil Procedure 51 expressly requires that objections to jury instructions state "distinctly the matter objected to and the ground of the objection." Fed.R.Civ.P. 51. The fundamental goal of the Rule 51 distinctiveness requirement is to adequately alert the trial judge of the potential error so that he or she can make the necessary corrections. See McDaniel v. Anheuser-Busch, Inc., 987 F.2d 298, 306 (5th Cir.1993). The objection made in this case could not have adequately pointed out the now-asserted error to the trial judge for his correction; since the purpose of Rule 51 has not been at all furthered, this writer does not feel that error has been sufficiently preserved here. At the very least this writer feels that the same allowances given MOPAC must also be given to Gregory.