UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 93-4829
_____

ALLEN C. GREGORY,

Plaintiff-Appellee,

versus

MISSOURI PACIFIC RAILROAD
COMPANY, d/b/a Union Pacific
Railroad Company,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____
(August 31, 1994)

Before JOHNSON, BARKSDALE, and DeMOSS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

The principal issue in Allen C. Gregory's slip and fall action against his employer, Missouri Pacific Railroad Company (MOPAC), arising out of oil on the walkway of its locomotive, is the peremptory instruction that the presence of the oil violated the Boiler Inspection Act, 45 U.S.C. § 23. Because violation of the Act, *vel non*, was a question for the jury, we **REVERSE** and **REMAND** for a new trial.[1]

_____

[1] Accordingly, we do not address MOPAC's contention that it is entitled to a new trial because the damages were excessive, or its related contentions regarding lack of proof of causation and the testimony of Gregory's expert economist.

Gregory alleged that, in January 1989, while employed by MOPAC, he slipped on oil on a locomotive walkway and fell; but this action was not filed until mid-1991, culminating in a four day trial in the spring of 1993.[2] After being instructed that oil on the walkway violated the Boiler Inspection Act (BIA), the jury awarded Gregory approximately $362,000.[3]

---

[2] Gregory testified about the injuries as follows. As a result of the fall, he injured his left ankle and lower back; because his ankle was hurt so badly, he did not pay much attention to the back injury; he received physical therapy for his ankle for several months, but continued to have problems with it giving way, causing him to fall several times a week; in May 1989, he injured his ankle when he stepped on a root in his yard; and that July, he broke a bone in his hand when his ankle gave way as he was getting out of his car, causing its door to close on his hand. (MOPAC introduced evidence that Gregory broke the bone in his hand when he hit a wall during an argument with his ex-wife. And, it introduced the ex-wife's deposition testimony that Gregory told her that he was going to tell the doctor that his ankle gave way, causing him to slip and fall into the car door, so that he could get a better settlement from the railroad.)

Gregory testified further that he tried to return to light duty for MOPAC in May 1990; that on his second day, as he was coming down the steps of an engine, he had a pain in his injured hand; that he released the railing and fell to a standing position, aggravating his injured back; that his ankle was completely healed; and that his claim for future loss of earning capacity was based solely on the back injury caused by the January 1989 fall.

Gregory had previously injured his left ankle, right wrist, and lower back while working for MOPAC in September, 1987, and was off work for five months. He accepted $22,000 from MOPAC in settlement of his claims, and signed a release which stated that those injuries were permanent. Gregory testified at trial, however, that the 1987 injuries were not permanent, and that he had signed the release only because he was told by MOPAC that he could not go back to work unless he did so.

[3] Gregory received approximately $62,000 for physical pain and mental anguish, approximately $70,000 for past lost wages, and $230,000 for future loss of earning capacity.

II.

"[T]he BIA is a safety statute which is to be liberally construed to afford protection to railroad employees". *Oglesby v. Southern Pacific Transp. Co.*, 6 F.3d 603, 606 (9th Cir. 1993) (citing *Lilly v. Grand Trunk Western R.R.*, 317 U.S. 481, 486 (1943)). It "imposes `an absolute and continuing duty' to provide safe equipment". *Richardson v. Consolidated Rail Corp.*, 17 F.3d 213, 216 (7th Cir. 1994) (quoting *Urie v. Thompson*, 337 U.S. 163, 188 (1949)). The Act provides in relevant part:

> It shall be unlawful for any carrier to use ... any locomotive unless said locomotive ... and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed ... without unnecessary peril to life or limb....

45 U.S.C. § 23.

In its peremptory instruction, the court employed language from both the BIA and a regulation adopted under it, 49 C.F.R. § 229.119(c). It instructed that the BIA required operation "without unnecessary peril to life or limb"; and from the regulation, without referencing it, instructed that the Act "places an absolute duty ... to ... [prevent] an accumulation of oil on ... the ... passageway which presents a hazard to slipping, falling or tripping by its employees."[4]

---

[4] The jury was instructed:

> The [BIA] was adopted to protect the safety of railroad employees by imposing certain absolute standards of maintenance for equipment used on railroads. The [BIA] makes it unlawful for any railroad to use or permit to be used on its line

A.

MOPAC contends that, because there was a factual dispute as to whether the oil presented a slipping hazard and thus constituted an "unnecessary peril to life or limb", the district court erred by peremptorily instructing the jury that MOPAC violated the BIA.[5]

> any locomotive unless the entire locomotive and it[]s appurtenances are in proper condition and safe to operate *without unnecessary peril to life or limb* and it has passed the mandatory daily inspection.
>
> This statute places an absolute duty on the railroad to, among other things, avoid the use of a locomotive which has an *accumulation of oil on its floor of the cab or passageway which presents a hazard to slipping, falling or tripping* by its employees.
>
> In connection with the violation of this law you need not consider whether the railroad was negligent, whether the railroad exercised diligence or due care, or whether the railroad knew of the existence of an accumulation of oil on a walkway or some other defect in the equipment. These matters are not relevant to the claim that [MOPAC] violated the [BIA], since the act imposes an absolute duty on the railroad for injuries caused in whole or in part by violation of the act.
>
> Since it is uncontested in this case that there was an accumulation of oil on the walkway or passageway that ... Gregory was using on January the 19th, 1989, you are instructed that on this occasion [MOPAC] was in violation of the [BIA]. Under such circumstances, [MOPAC] is liable to [Gregory] for any injuries which were brought about in whole or in part by the violation.

(Emphasis added.)

[5]    Gregory maintains that MOPAC failed to preserve this issue. MOPAC's objections to the charge included the following:

> [T]here's no evidence ... that this oil on the walkway was ... perilous to life and limb; and therefore, come under the parameters of the [BIA].

- 4 -

The familiar standard adopted by our court in *Boeing v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) governs our review of the peremptory instruction. *Simmons v. King*, 478 F.2d 857, 860 (5th Cir. 1973). If all of the evidence, considered in the light and with all reasonable inferences most favorable to MOPAC, points so strongly and overwhelmingly in favor of Gregory that reasonable jurors could reach only one conclusion -- that the oil on the passageway presented an unnecessary peril to life or limb because it presented a slipping, falling or tripping hazard (unnecessary peril) -- the instruction was appropriate. *Boeing*, 411 F.2d at 374. But, if there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of

---

I think that that's what the [BIA] does require.

Although the docket sheet reflects that MOPAC submitted proposed instructions, they are not in the record; nor is the charge conference. Therefore, we do not know what transpired regarding the formulation of the charge. After the jury was instructed, the parties were given an opportunity to make their objections to the charge. Gregory had none; MOPAC, several, including the one quoted above. Certainly, for purposes of contesting the peremptory nature of the instruction, the objection could have been more specific, but it meets the minimal requirements of Fed. R. Civ. P. 51. In its objections to the charge, MOPAC did not contend specifically that the oil did not constitute a slipping hazard under the regulation. However, we consider that objection subsumed in its objection to the instruction that it violated the BIA, inasmuch as the charge did not differentiate between the statute and the regulation, but stated that "[t]his statute [the BIA] places an absolute duty on the railroad to ... avoid the use of a locomotive which has an accumulation of oil on its floor of the cab or passageway which presents a hazard to slipping, falling or tripping by its employees".

- 5 -

impartial judgment might reach different conclusions", the question should have been submitted to the jury. **Boeing**, 411 F.2d at 374.[6]

There was conflicting evidence on whether the oil constituted an unnecessary peril. Photographs taken the day after the incident depict several spots of oil on the walkway. Gregory testified that he slipped in the "largest spot, or puddle", located next to the wall of the engine and two to three steps beyond the bottom of the locomotive steps which he had descended just before slipping. He described the size of the spot as "probably 12 inches, maybe, a little larger".

The oil, *as photographed the day after the incident*, covered approximately one-third of the width of the walkway. One of the

[6]    The parties have not cited, nor have we found, any cases addressing a peremptory instruction such as the one at issue. Numerous cases imply, however, that whether a condition presents an "unnecessary peril to life or limb" is an issue of fact for the jury (assuming, of course, that the evidence is not so one-sided that the jury could reach only one conclusion). *See, e.g.*, **Lilly v. Grand Trunk Western R. Co.**, 317 U.S. 481, 489 (1943) ("The use of a tender, upon whose top an employee must go in the course of his duties, which is covered with ice seems to us to involve `unnecessary peril to life or limb' -- enough so as to permit a jury to find that the Boiler Inspection Act has been violated"); **Topping v. CSX Transp., Inc.**, 1 F.3d 260, 261 (4th Cir. 1993) ("It seems to us a classic jury question whether the presence of the loose metal object rendered the locomotive cab `unsafe to operate'"); **St. Louis Southwestern Railway Co. v. Williams**, 397 F.2d 147, 148-49, 151 (5th Cir. 1968) (jury could properly find that presence of oil on step of locomotive constituted a violation of the BIA); **Calabritto v. New York, New Haven & Hartford R. Co.**, 287 F.2d 394, 395 (2d Cir.) ("the use of an engine whose surface has been made slippery by sand and oil may ... be found by a jury to involve `unnecessary peril to life or limb' in violation of the []BIA"), *cert. denied*, 366 U.S. 928 (1961); **Louisville & N.R. Co. v. Botts**, 173 F.2d 164, 167 (8th Cir. 1949) ("trial court clearly was entitled to allow the jury to decide whether the footboard, in the use to which the switch engine was put, was in proper condition and safe to operate without unnecessary peril to life or limb").

photographs depicts a man with a broom, apparently sweeping the walkway. Gregory testified that the oil depicted in the photographs looked different from when he fell; and that, in the photographs, it appears that "oil dry" (a granular or powder substance placed on the oil to absorb it) has been placed on the oil. But MOPAC's manager of train operations, Larry Erwin, who saw the oil shortly after the incident, testified that a photograph of the walkway taken the day after the incident fairly and accurately represented what he saw on the day of the incident.

Gregory testified that the oil was wet and was absorbed into his clothing, boots, and radio; that he did not know he had fallen in the oil because he was sitting in it; and that, when he got up, the engineer told him that he had oil all over his pants. On cross-examination, Gregory testified that the oil was plainly visible, and that he would have seen it had he been looking down.

The conductor testified that he did not notice any oil on Gregory's clothing. On cross-examination, he admitted that, when he went to check on Gregory after the incident, he saw on the walkway a "puddle of oil" which measured about 18" by 8". And, his report prepared on the date of the incident stated that Gregory "stepped in [a] puddle of oil".

Erwin, manager of train operations, testified also that he met the train immediately after the incident, and saw "a patch of oil" where it occurred. He described the oil as follows:

> [W]hen I say a patch of oil, it wasn't like you just poured some oil out of a can of motor oil, it wasn't that type of oil. It ... looked more like a

> dirty grease, greasy spot on the side of the engine walkway next to the inspection doors....

Erwin testified that the oil did not look slippery; rather, it was "kind of crusty looking ... [;] it was just a little place that looked like it had been there for a while and it wasn't fresh looking"; that the oil did not appear to be a slipping hazard; that the walkway had a nonskid surface; that there were no footprints in the oil spot and "no apparent marks of anybody slipping in this oil or grease"; and that he did not see oil on Gregory's clothing.

When asked on cross-examination whether "[i]t's a pretty serious no-no on the railroad to have oil on the walkway", Erwin replied: " ... I would say it depends on where the oil was ...." He opined that the oil was not a BIA violation.[7]

Because there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions", *Boeing*, 411 F.2d at 374, as to whether the oil constituted an unnecessary peril, that question should have been presented to the jury.

### B.

Gregory counters that the regulation referenced in the charge controls, but takes a position inconsistent with both the language used by the district court and the position Gregory took there. In

---

[7] On the date of the incident, the train was using two engines. Gregory allegedly was injured on the second unit, and he admitted that he was supposed to be on the lead unit. Erwin opined that the oil did not violate the BIA because the crew operates off the lead unit, and the oil was on the second unit; and the crew had not reported the oil.

the alternative, he asserts that the jury did find that the oil violated the Act.

1.

Gregory does not defend the peremptory instruction on the ground that the evidence supported only a conclusion that the oil was an "unnecessary peril to life or limb". Instead, he maintains that he had only to prove that the oil violated regulations promulgated under the Act.[8] MOPAC agrees that violation of such a regulation can be a violation of the BIA, but asserts that the regulations do not provide that the mere presence of oil on a walkway violates the Act.

The regulation MOPAC is said to have violated, as a matter of law, provides:

> Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or

---

[8]     See, e.g., **Lilly v. Grand Trunk Western R. Co.**, 317 U.S. 481, 488 (1943) (a rule adopted in the exercise of the Interstate Commerce Commission's authority "acquires the force of law and becomes an integral part of the [BIA]"); **Givens v. Missouri-Kansas-Texas R. Co.**, 195 F.2d 225, 229 (5th Cir. 1952) ("A violation of any of [the] particular requirements [promulgated by the ICC] is a violation of the [BIA]"); **Mosco v. Baltimore & Ohio R.**, 817 F.2d 1088, 1091 (4th Cir.), cert. denied, 484 U.S. 851 (1987) ("[A] carrier may violate the [BIA] in one of two ways. First, it may fail to comply with the regulations promulgated by the Federal Railroad Administration. Compliance with these regulations is not, however, the only duty imposed by the Act. The Act also imposes a broader duty on carriers to keep all the parts and appurtenances of their locomotives in proper condition and safe to operate without unnecessary peril to life or limb".).

The ICC's regulatory authority under the BIA was transferred to the Department of Transportation. See 49 U.S.C. § 1655(e)(1)(E). The Federal Railroad Administration is responsible for carrying out the Secretary of Transportation's duties under the BIA. See 49 U.S.C. § 103 (1994).

> fire hazard.  Floors shall be properly treated to
> provide secure flooring.

49 C.F.R. § 229.119(c).[9]  According to Gregory, "whether something created a slipping, tripping, or fire hazard ... would be raised only if an injury resulted from `any obstruction' not specifically listed in the regulation, i.e. - not from oil, water or waste".  In district court, however, in opposition to MOPAC's new trial motion, Gregory interpreted the regulation as prohibiting "oil on a passageway that creates a hazard of tripping or slipping".[10]

As quoted *supra*, the peremptory instruction took a position contrary to Gregory's new found interpretation.  It instructed that the BIA was violated if the "accumulation of oil ... present[ed] a hazard to slipping, falling or tripping", not that the mere presence of oil constituted a violation.[11]

Accordingly, the interpretation Gregory takes now raises an issue that we cannot consider.  An appellee generally may urge in support of a judgment any matter appearing in the record, *e.g.*,

---

[9]    Gregory also cites a more general regulation, 49 C.F.R. § 229.45, which provides:

> **General Condition**.  All systems and components of a locomotive shall be free of conditions that endanger the safety of the crew ... includ[ing] ... leaks and accumulations of oil on electrical equipment that create a personal injury hazard....

[10]    Gregory's cross-examination of Erwin reflects the same interpretation of the regulation as that urged in Gregory's response to the new trial motion.

[11]    Even on appeal, Gregory seems to alternate on how the regulation is to be read.  At one point, he states that the instruction, which would include the above quoted portion construing the regulation, "was a correct statement of the law".

*City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1254 (5th Cir. 1976), but that rule is not applicable here for the simple -- and obvious -- reason that this point was *not* raised in district court.[12]  Even more than that, as noted above, Gregory took the opposite position.  Gregory cannot take one position before the district court and then take an inconsistent position here.  *See, e.g.*, *Jett v. Zink*, 474 F.2d 149, 154-55 (5th Cir.) (party who argued on first appeal that action was *in personam* was precluded from arguing on second appeal that the action was *quasi in rem*), *cert. denied*, 414 U.S. 854 (1973).

But, more important, for this challenge to the peremptory instruction, it is the language of the instruction that must control.  And, in this regard, we agree with the district court's interpretation of the regulation.[13]

The regulation is not violated by the mere presence of *any* oil, water, or waste on a passageway; instead, the presence of such

---

[12]  *See also* **United States v. American Railway Express Co.**, 265 U.S. 425, 435 (1924) ("the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it"); *cf*. **F.D.I.C. v. LaGuarta**, 939 F.2d 1231, 1240 & n.20 (5th Cir. 1991) (summary judgment generally should not be affirmed on grounds that were neither raised nor relied on in the district court).  *But see* **Schweiker v. Hogan**, 457 U.S. 569, 584-85 & n.24 (1982) (although appellees did not present statutory argument in the district court, "they are not precluded from asserting it as a basis on which to affirm that court's judgment").  **Schweiker** is distinguishable because, *inter alia*, it dealt with a *new* contention rather than one that was inconsistent with the appellees' position in the district court.

[13]  We address Gregory's interpretation of the regulation in the interest of judicial economy, should Gregory take his present position on remand.

a substance is a violation only if it creates a slipping, tripping or fire hazard. To read the regulation otherwise is to impose an absurd result. For example, under Gregory's interpretation, the regulation would be violated every time a train operated in the rain.[14] Obviously, such an interpretation is illogical. It goes without saying that, in construing a statute or regulation, we seek to avoid imposing such results. *See, e.g.*, **Forsyth v. Barr**, 19 F.3d 1527, 1544 (5th Cir. 1994); **Brock v. City Oil Well Service Co.**, 795 F.2d 507, 510 (5th Cir. 1986).

Moreover, Gregory's interpretation calls into question the validity of the rule. In enacting the BIA, Congress recognized that "[t]he operation of an engine, however equipped, involves *some* `danger to life or limb.'" **United States v. Baltimore & O.R. Co.**, 293 U.S. 454, 462 (1935) (emphasis added). The BIA does not address *all* perils associated with locomotives, only "unnecessary" perils; it "conferred authority to prescribe by rule specific devices, or changes in the equipment, *only* where these are required to remove `*unnecessary* peril to life or limb'". *Id*. at 463 (emphasis added). Rules promulgated under the BIA must be supported by a finding that the rule is necessary "to remove `unnecessary peril to life or limb'". *Id.; see also* **Lilly v. Grand Trunk Western R. Co.**, 317 U.S. at 486 (the railroad regulator "is broadly authorized to set the standards of compliance by prescribing rules and regulations by which fitness for service [of

---

[14] Erwin testified that, as is well known, locomotives operate in all kinds of weather, 24 hours a day, seven days a week, and that in wet weather, water cannot be kept off the passageways.

locomotives, tenders and their appurtenances] shall be determined, provided that ... the Commission finds such are required to remove unnecessary peril to life or limb") (brackets in original; internal quotation marks and citation omitted).

Gregory has not cited, nor have we located, any indication that the Secretary of Transportation has found that *any* amount of oil on a locomotive constitutes an *unnecessary* peril to life or limb. We decline to interpret the regulation in a manner that would call into question its validity.[15]

## 2.

In the alternative, Gregory contends that the jury determined implicitly that the oil was a peril when it answered "yes" to the first interrogatory, which asked: "Do you find, from a preponderance of the evidence, that the oil on the walkway played any part, no matter how slight, in bringing about an injury to [Gregory]....?" Gregory asserts that "[t]he fact that the oil puddle was sufficient to cause someone to slip and fall makes it a peril under the [BIA]". Once again, Gregory takes a position inconsistent with the one he took at trial. There, he took the case to the jury basking in the warmth of a peremptory instruction: the oil was a violation of the BIA. This was the roadmap for the jury; one that Gregory was no doubt delighted with. Now Gregory wants to change the rules, and seeks shelter under a special

_____

[15] As discussed *supra*, because there was "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions", whether the oil constituted a slipping hazard, and thus violated the BIA, was a question for the jury.

interrogatory that simply asked whether the oil -- which the jury was instructed was a violation of the BIA -- had any causative effect for Gregory's injury.  In no way was the jury asked to decide whether the oil constituted a peril, under the Act or through the regulation; just the opposite.  Its operating mandate was that the oil *was* a violation.

In any event, the Ninth Circuit rejected a similar contention in ***Oglesby v. Southern Pacific Transp. Co.***, 6 F.3d 603 (9th Cir. 1993).  Oglesby injured his back when he attempted to replace an engineer's seat in a locomotive.  ***Id***. at 604.  The district court instructed the jury that

> [t]o establish a violation of the [BIA] it is not necessary to show any negligence on the part of the ... railroad and it is not necessary to show a mechanical defect.  Proof of the failure of an appliance to work efficiently, when used in its customary and proper manner, fastens liability on the railroad without a specific defect.  *Plaintiff need only establish that on the occasion in question the item covered by the [BIA] did not work properly.*

***Id***. at 610 (emphasis in original).  The railroad contended that the instructions improperly allowed the jury to find a BIA violation without finding that a defect in the seat posed a safety hazard. ***Id***. at 609-10.  The Ninth Circuit agreed that the instructions "improperly allow the jury to find a violation of the BIA merely because the seat was not in a proper condition rather than because it was unsafe, as the statute requires". ***Id***. at 610.  It rejected Oglesby's assertion that a BIA violation was established by a mere showing that the seat did not work efficiently, noting that it had "found no case in which a violation [of the BIA] was established

- 14 -

without a showing that the alleged defect created a safety hazard". *Id*. at 610.

In the alternative, Oglesby contended that any error in the jury instructions was harmless because in finding that the defective seat caused his injury, the jury must also have found that it was unsafe. *Id*. The Ninth Circuit disagreed, stating that "the alleged defects themselves must first be found to be unsafe in order to constitute a violation of the BIA. Only once this finding has been made is a BIA violation established and an inquiry into whether the defective seat was the proximate cause of the injury relevant". *Id*.

We agree. An inquiry whether the oil caused Gregory to slip and injure himself was not relevant unless the jury found first that the oil violated the BIA. Under proper instructions, the jury could have found that the oil did not constitute a safety hazard.

III.

"[T]he seventh amendment preserves the right of parties to a jury trial unless there is `no legally sufficient evidentiary basis for a reasonable jury to find for [the] party on th[e] issue'". *Lloyd v. Pendleton Land & Exploration, Inc.*, 22 F.3d 623, 626 (5th Cir. 1994) (quoting Fed. R. Civ. P. 50(a)(1)). Viewing the evidence in the light most favorable to MOPAC, we conclude that it does not point so strongly and overwhelmingly in favor of Gregory that reasonable jurors could not find that the oil on the passageway did not present an unnecessary peril to life or limb. Accordingly, the jury should have been allowed to decide whether

- 15 -

MOPAC violated the BIA. Therefore, we **REVERSE** the judgment and **REMAND** the case for a new trial.

**REVERSED AND REMANDED**

JOHNSON, Circuit Judge, dissenting:

The Boiler Inspection Act (BIA) was promulgated by Congress for the purpose of promoting safety for railroad employees and the public. *Lilly v. Grand Trunk Western RR Co.*, 317 U.S. 481, 485 (1943). Section 23 of the BIA makes it

> . . . unlawful for any railroad to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such railroad without unnecessary peril to life or limb. . .

45 U.S.C. § 23. While recognizing this more general requirement, the Supreme Court and this Court have additionally made clear that violating any rules and regulations promulgated by the Department of Transportation will constitute more specific violations of the BIA. *See Lilly*, 317 U.S. at 488; *Givens v. Missouri-Kansas-Texas R. Co. of Texas*, 195 F.2d 225, 228 (5th Cir. 1952) (contrasting the instances where specific and definite violations of the BIA may occur, creating liability as a matter of law [much like specific and definite violations of the Safety Appliance Act], with the more general violations, creating jury issues). *Lilly* made clear that all Department of Transportation rules and regulations have the same force and authority as law. *Lilly*, 317 U.S. at 488. Thus, a violation of a Department of Transportation regulation constitutes a violation of the BIA *per se*. *See id.*

- 16 -

Department of Transportation Regulation 43 C.F.R. § 229.119(c) clearly states that the "[f]loors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard." 43 C.F.R. § 229.119(c). Interpreting this regulation according to its plain meaning, the regulation prohibits the presence of the specific substances of oil, water, and waste and then goes on to make a more general prohibition of any other obstruction that creates a slipping, tripping, or fire hazard. *See id.* The undisputed evidence in this case establishes that there was an 18" by 8" conglomeration of oil on the passageway of the train when Mr. Gregory slipped. (R. III, 406-07). The presence of this oil violates the regulation, and in turn the BIA, on its face, thereby rendering the trial judge's instruction fully appropriate.

The majority holds Gregory's argument that the BIA combined with 49 C.F.R. § 229.119 creates a strict duty on the part of railroads to keep their floors free of oil is an issue that the Court cannot consider. They reach this conclusion first on the basis that Gregory is estopped from making such an argument on the ground that he took an inconsistent position in the district court.[16] Second, the majority presumes the district court was

_____

[16]The stringent consistency required of Gregory by the majority is itself inconsistent with laxity granted by the majority to MOPAC in the way of appellate preservation requirements. The majority is willing to exercise every benefit of the doubt in favor of MOPAC in holding its vague and disjointed objection to be specific enough to preserve error. *See* Majority Opinion at Note 5. Federal Rule of Civil Procedure 51 expressly requires that objections to jury instructions state "distinctly the matter objected to and the ground of the objection." FED. R. CIV. P. 51. The fundamental goal of the Rule 51 distinctiveness requirement is to adequately alert the trial judge of the potential error so that he or she can make

operating under the assumption that unnecessary peril to life or limb is an absolute  prerequisite to any BIA violation.  However, the fact that Gregory and the trial court may have referred to the hazard produced by the oil is not inconsistent with the position that violation of the Department of Transportation regulation results in strict liability under the BIA.  Certainly, as the majority points out, a prime concern of the BIA was the prevention of unnecessary peril to the life and limb of its employees.  This is precisely *why* Congress gave the Department of Transportation full legal authority to promulgate rules and regulations for the railroads.  Additionally, this concern with personnel security is why Congress backed the Department of Transportation's authority with strict liability under the BIA.   While strict liability statutes may be highly controversial, this Court and the Supreme Court have recognized their need and constitutionality.  *See, i.e., Gollust v. Mendell*, 501 U.S. 115, 122 (1991); *United States v. West of England Ship Owner's Mutual Protection & Indemnity Ass'n*, 872 F.2d 1192, 1198 (5th Cir. 1989).  When Congress acts or authorizes such a strict liability statute for the protection of a specified group, it is the duty of this Court to support it in that decision.

Today the majority seeks to establish a defense where Congress

---

the necessary corrections.     *See McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 306 (5th Cir. 1993).  The objection made in this case could not have adequately pointed out the now-asserted error to the trial judge for his correction;  since the purpose of Rule 51 has not been at all furthered, this writer does not feel that error has been sufficiently preserved here.  At the very least this writer feels that the same allowances given MOPAC must also be given to Gregory.

intended there be none. As the majority recognizes, there is likely to be water and/or oil on trains due to a variety of reasons. Congress and the Department of Transportation also recognize this tendency through the BIA and Regulation 49 C.F.R. § 229.119. They both also recognize that because of such conditions and the great dangers these conditions can present to railroad employees, the railroads have an absolute duty to either rectify such problems or cease operation of the train until such problems cease.

Accordingly, this dissent is respectfully tendered.