[No. C021640. Third Dist. Apr. 22, 1997.]

MARY J. FONTAINE, Plaintiff and Respondent, v.
NATIONAL RAILROAD PASSENGER CORPORATION, Defendant and
Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of subparts A, B, and E of part I. of the Discussion.

## COUNSEL

Diepenbrock, Wulff, Plant & Hannegan, John S. Gilmore, Charity Kenyon and Christine Cusick for Defendant and Appellant.

The Crow Law Firm, Jack C. Sevey and Gerald J. Adler for Plaintiff and Respondent.

## OPINION

**NICHOLSON, J.**—The National Railroad Passenger Corporation (Amtrak) appeals from a $1.9 million jury verdict in favor of Mary J. Fontaine, who was severely injured in the course of her duties as an Amtrak assistant railroad conductor when she fell from a locomotive ladder. Amtrak presents numerous contentions of instructional error, and also argues the damages were excessive.[1] We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 18, 1992, Fontaine fell as she was descending a locomotive ladder in Amtrak's Oakland coach yard. It was disputed at trial whether Fontaine stepped in some oil in the locomotive passageway before she fell. Despite five surgeries, Fontaine's left arm and hand are permanently disabled: She has a shortened left arm, is unable to grip or make a fist, and has lost about two-thirds of her normal wrist motion. She can no longer work as an operating railroad worker. She has gone back to school and is studying to become a journalist.

Fontaine sued Amtrak in July 1993 for negligence under the Federal Employers' Liability Act (FELA) and for strict liability under the Boiler Inspection Act (BIA), a part of the Safety Appliance Act (SAA). The BIA claim was based on the failure to provide a safe walking surface, due to the presence of oil on the walkway, and an unsafe grab iron.[2] Amtrak responded Fontaine was the sole cause of her injuries and had failed to mitigate her damages.

After a 10-day trial, the jury deliberated 4 days before returning a verdict of $1,966,880; the jury found for Fontaine on both the FELA negligence

[1]We grant Fontaine's motion to correct errors in her appellate brief.
[2]The safety of the grab iron was not pursued at trial.

cause of action and the BIA strict liability cause of action.[3] Asserting the damages were excessive, Amtrak moved for a new trial and for judgment notwithstanding the verdict; the trial court denied both motions.

## DISCUSSION

### Overview

Before addressing Amtrak's contentions of instructional error, we must first explain the governing federal substantive law concerning railroad locomotive safety. At issue in this appeal are two interrelated statutory schemes: the FELA and the BIA.

The FELA provides, in pertinent part: "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (45 U.S.C. § 51.) The FELA further provides "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." (45 U.S.C. § 53.)

The BIA provided, in pertinent part: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of this Act and are able to

---

[3]The jury found Fontaine 39 percent contributorily negligent on the FELA claim, and accordingly, the judgment on the FELA claim was reduced by this amount. As we will explain herein, there is no similar reduction for the BIA claim because BIA violations rest on strict liability, and comparative negligence is not a defense.

withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."[4] (45 U.S.C. former § 23.)

■ Proximate cause, as traditionally understood, is not required to establish causation under either the FELA or the BIA. "Under the FELA, an employee is entitled to recover damages if the employer's negligence played *any* part in producing the injury, no matter how slight." (*Taylor* v. *Burlington Northern R. Co.* (9th Cir. 1986) 787 F.2d 1309, 1313, original italics; see *Ellison* v. *Shell Oil Co.* (9th Cir. 1989) 882 F.2d 349, 353 ["An employee can recover damages under the FELA if the employer's negligence played any part, however slight, in producing his or her injury"]; see also *Oglesby* v. *Southern Pacific Transp. Co.* (9th Cir. 1993) 6 F.3d 603, 608-609 [liability under the BIA is established if defendant's violation of the BIA "played any part, no matter how small, in bringing about or actually causing injury to the plaintiff . . . without any requirement of a showing of negligence on the part of the defendant" (italics omitted)].)

■ "The BIA and the SAA are regarded as amendments to the FELA. [Citation.] The BIA supplements the FELA to provide additional public protection and facilitate employee recovery. [Citations.] The BIA is to be considered together with other federal railroad safety laws, and is to be construed liberally to carry out their remedial and humanitarian purposes. [Citation.] [¶] The FELA and the BIA further their humanitarian goals by imposing different types of liability. Liability under the FELA is premised on the railroad's negligence, however small. [Citations.] In contrast, the BIA imposes on the carrier an absolute duty to maintain the locomotive, and all its parts and appurtenances, in proper condition, and safe to operate without unnecessary peril to life or limb. [Citation.] The FELA allows recovery in a broad range of situations, while liability under the BIA only occurs under narrow circumstances. As a result, claims which cannot be maintained under the BIA are often actionable under the FELA. [Citations.]" (*King* v. *Southern Pacific Transp. Co.* (10th Cir. 1988) 855 F.2d 1485, 1488, fn. 1.)

Thus, neither contributory negligence nor assumption of the risk is a defense to a BIA violation which has contributed to the cause of an injury. (*Baltimore & Ohio R.R. Co.* v. *Groeger* (1925) 266 U.S. 521, 528 [45 S.Ct. 169, 172, 69 L.Ed. 419].) A railroad is "bound absolutely to furnish . . . [a locomotive] in proper condition for use without unnecessary danger." (*Id.* at

---

[4]Section 23 of title 45 of the United States Code was repealed on July 5, 1994, "except for rights and duties that matured, penalties that were incurred, and proceedings that were begun before enactment." (45 U.S.C.S. § 23 (May 1996 supp. at p. 5); see Pub.L. No. 103-272, § 7(b), 108 Stat. 1379.) The subject matter formerly covered by section 23 is now found at 49 United States Code section 20701.

pp. 528-529 [45 S.Ct. at p. 172].) Proof of a BIA violation demonstrates "negligence as a matter of law." (*Urie* v. *Thompson* (1949) 337 U.S. 163, 189 [69 S.Ct. 1018, 1034, 93 L.Ed. 1282, 1303, 11 A.L.R.2d 252].)

# I

## *Contentions of Instructional Error*

Amtrak contends the jury was confused over the distinction between negligence (the basis for FELA liability) and strict liability (the basis for BIA and SAA liability). Amtrak contends this confusion occurred because Fontaine (1) offered expert evidence which confused the two bases for liability, (2) confused the two bases for liability in her argument to the jury, and (3) confused the two bases for liability in her jury instructions as given by the court. As a result, Amtrak contends, the case was submitted to the jury "indiscriminately" as a strict liability case, resulting in prejudicial error and a miscarriage of justice. In addition, Amtrak argues the trial court erred in permitting the jury to consider evidence of a ladder design defect, claiming a design defect cannot constitute the basis for a BIA violation.

As an initial matter, Amtrak attempts to make far too much of the distinction between liability under the FELA and the BIA. Amtrak contends, "The plaintiff's exclusive remedy for negligence was FELA." Amtrak is mistaken. ■ Fontaine's critical theory was strict liability under the BIA, which is a subpart of the FELA. If the plaintiff can show a violation of the BIA which in any way contributed to her injuries, she has established liability under both the BIA and the FELA. Even if the plaintiff cannot show a violation of the BIA which in any way contributed to her injuries, she may still recover under the FELA if she can show the employer was providing unsafe working conditions under negligence standards. (See *Lilly* v. *Grand Trunk R. Co.* (1943) 317 U.S. 481, 485 [63 S.Ct. 347, 350-351, 87 L.Ed. 411] [employee injured by reason of violation of the BIA brings action under the FELA and charges violation of the BIA].)

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## C. *Violation of Any Regulation as Violating the BIA*

■ Amtrak next contends the trial court "erred prejudicially in instructing that violation of any regulation violates BIA, subjecting Amtrak to strict

---

*See footnote, *ante*, page 1519.

liability." Amtrak asserts the trial court "misstate[d] the law" and thus "expanded Amtrak's exposure to strict liability." (Italics omitted.) Amtrak's argument skates perilously close to being a sufficiency of the evidence challenge regarding the presence of oil in the locomotive passageway.

Although we have previously set forth the content of the BIA, we do so again for ease in comparing the provisions of the BIA with the challenged instruction. The BIA provided: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of [this Act] *and are able to withstand such test or tests as may be prescribed in the rules and regulations* hereinafter provided for." (Italics added in Amtrak's brief.) (45 U.S.C. former § 23.)

The "expanded" exposure to strict liability purportedly resulted from the italicized language in the following instruction: "Under the Boiler Inspection Act, it is unlawful for a carrier such as defendant to use or permit any locomotive to be used on its line unless the locomotive, its boiler, tender, and all of their parts and appurtenances are in proper condition and safe to operate in the service to which they are put, so that they can be employed in the active service of the carrier without unnecessary peril to life or limb, *and unless the locomotive, its boiler, tender, and all of their parts and appurtenances* have been periodically inspected in accordance with the requirements of the Act and *comply with regulations promulgated under the Act.*" (Italics added in Amtrak's brief.)

The italicized language in the modified instruction did not "expand" Amtrak's liability; the modified instruction is completely consistent with the federal statute. (See, e.g., *Lilly* v. *Grand Trunk R. Co., supra,* 317 U.S. at p. 488 [63 S.Ct. at p. 352] [a rule adopted in the exercise of the Interstate Commerce Commission's authority "acquires the force of law and becomes an integral part of the [BIA]"]; *Givens* v. *Missouri-Kansas-Texas R. Co. of Texas* (5th Cir. 1952) 195 F.2d 225, 229 ["[a] violation of any of [the] particular requirements [promulgated by the Interstate Commerce Commission] is a violation of the [BIA]"]; *Mosco* v. *Baltimore & Ohio R.R.* (4th Cir. 1987) 817 F.2d 1088, 1091 ["a carrier may violate the [BIA] in one of two ways. First, it may fail to comply with the regulations promulgated by the Federal Railroad Administration. Compliance with these regulations is not, however, the only duty imposed by the Act. The Act also imposes a broader

duty on carriers to keep all the parts and appurtenances of their locomotives in proper condition and safe to operate without unnecessary peril to life or limb"].)[6]

Contrary to Amtrak's implication, the violation of a regulation, standing alone, did not create liability in this case. Liability was imposed only because the jury found Amtrak violated the BIA and this violation contributed to Fontaine's injury.[7]

The trial court instructed the jury: "If a railroad carrier, such as defendant, violates the Act or a regulation promulgated under the Act, and if the violation contributes in any way or manner to the injury of an employee who, when so injured, was engaged in the duties of employment, the railroad is liable in damages to the employee."[8] Moreover, the jury, during its deliberations, asked, "If we find that the Boiler Inspection Act (specifically

[6]We note the Interstate Commerce Commission's regulatory authority under the BIA was transferred to the Department of Transportation. (See former 49 U.S.C. § 1655(e)(1)(E).) The Federal Railroad Administration is responsible for carrying out the Secretary of Transportation's duties under the BIA. (See 49 U.S.C. § 103.)

[7]Amtrak cites a recent Fifth Circuit decision which Amtrak characterizes as "reversing judgment for plaintiff where jury was instructed that oil by itself was a violation of BIA." (*Gregory* v. *Missouri Pacific R. Co.* (5th Cir. 1994) 32 F.3d 160.)

*Gregory* involved an employee who slipped and fell due to oil on a locomotive walkway; the employee sued the railroad under the BIA. The trial court instructed the jury the railroad " 'was in violation of the [BIA] . . . [and thus] is liable to [plaintiff] for any injuries which were brought about in whole or in part by the violation.' " (32 F.3d at p. 161-162, fn. 4.) On appeal, the railroad argued whether the oil constituted an "unnecessary peril" was a question which should have been presented to the jury. (*Id.* at p. 163.) The applicable regulation provided: "Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard." (49 C.F.R. § 229.119(c) (1996); 32 F.3d at p. 164.)

The railroad *acknowledged* "violation of such a regulation can be a violation of the BIA, but assert[ed] that the regulations do not provide that the mere presence of oil on a walkway violates the Act." (*Gregory* v. *Missouri Pacific R. Co., supra,* 32 F.3d at p. 164.) The court concluded "[t]he regulation is not violated by the mere presence of *any* oil, water, or waste on a passageway; instead, the presence of such a substance is a violation only if it creates a slipping, tripping or fire hazard." (*Id.* at p. 165, original italics.) Accordingly, the issue in *Gregory* was whether the railroad had indeed *violated the regulation.* Amtrak correctly notes the Fifth Circuit stated "[t]he BIA does not address all perils associated with locomotives, only 'unnecessary' perils." (*Ibid.,* italics omitted.) However, *Gregory* does not undermine the premise a violation of a regulation constitutes a violation of the BIA.

[8]The four regulations provided to the jury were 49 Code of Federal Regulations sections 229.7 (locomotive must be "in proper condition and safe to operate . . . without unnecessary peril to life or limb" and must have been inspected as required by regulations), 229.21 (daily inspection and written report plus repair of any condition constituting noncompliance before locomotive is used), 229.45 (all components on locomotive must be free of conditions which would endanger safety of crew), and 229.119 (locomotive floors, passageways and compartments must be "kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard").

[49 C.F.R. §] 229.119 was violated, is [Fontaine] entitled to the verdict in her favor?" The trial court responded, in writing, "If you find that defendant violated the Boiler Inspection Act or one of the regulations promulgated under the act (including sec. 229[.]119), plaintiff is entitled to a verdict in her favor *if you also find* that the violation contributed in any way or manner to her injury or injuries. See p. 42. [¶] Approved by attorneys." (Original italics.) Page 42 of the jury instructions is the instruction just quoted.

We find no error.

### D. *Design Defect Instruction*

■ Although the violation of a regulation may constitute a violation of the BIA, a violation may also be found *absent* the violation of a specific administrative regulation pertaining to a particular item or course of action. Amtrak argues the trial court erred in permitting evidence at trial concerning the safety of the locomotive ladder's design. Amtrak appears to contend a defective design may never be the basis for liability under the BIA. However, nothing in the BIA, or the case law, excludes design claims. (See *St. Louis Southwestern Railway Company* v. *Williams* (5th Cir. 1968) 397 F.2d 147, 150 [noting, in dicta, the BIA's purpose is not "limited to *defects in the design* or construction of the locomotive and to equipment which has become mechanically defective" (italics added).)

The BIA renders it "unlawful for any carrier to use . . . any locomotive unless said locomotive . . . and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb . . . ." (45 U.S.C. former § 23.) The United States Supreme Court has held: "We find nothing in the [BIA] to warrant the conclusion that there is no liability for an unsafe locomotive, in view of the provisions of § 2 of the Act [45 U.S.C. former § 23], because some particular feature of construction, which has been found unsafe, has not been disapproved by the federal boiler inspector." (*Great Northern Ry. Co.* v. *Donaldson* (1918) 246 U.S. 121, 128 [38 S.Ct. 230, 233, 62 L.Ed. 616]; see also *Urie* v. *Thompson, supra,* 337 U.S. at pp. 190-191 [69 S.Ct. at p. 1035] [BIA "simply outline[s] a general standard which *may* be more specifically articulated in rules enunciated by the carriers subject to the approval of the Interstate Commerce Commission . . . ."], italics added; *Bolan* v. *Lehigh Valley R. Co.* (2d Cir. 1948) 167 F.2d 934, 936 ["if an appurtenance conforms with the I.C.C. regulations but nevertheless violates the Act, the latter must control"].)

Amtrak cites two cases in support of its contention the defective design evidence "ran afoul" of the "limitations on BIA strict liability." In its own

words, Amtrak claims: "Congressional interest in uniform equipment standards and in freeing railroads from the potentially paralyzing obligation to acquire non-uniform parts, precludes going to the jury with a claim that different equipment should have been installed or that the design of installed equipment was a violation of BIA. See *King* v. *Southern Pac. Transp. Co.* [citation] (no BIA strict liability for 'unsafe' locomotive seat which conformed to regulations but did not have arm rests or safety belts); *Mosco* v. *Baltimore & Ohio R.R.* [citation] (no BIA strict liability based on absence of bars, grates or similar protective devices over windows)."

However, in both of Amtrak's cited authorities, the reason the court found no liability for these protective devices was because the omitted protective devices *did not constitute an integral or essential part of a completed locomotive*. Such a finding was of importance due to a decision of the United States Supreme Court which limited the "parts and appurtenances" language of the BIA as follows: "Whatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission, are within the statute. But mere experimental devices which do not increase the peril, but may prove helpful in an emergency, are not." (*Southern Railway Co.* v. *Lunsford* (1936) 297 U.S. 398, 402 [56 S.Ct. 504, 506, 80 L.Ed. 740].)

There is no question the ladder at issue was an "integral or essential part" of a completed locomotive: it permitted personnel movement between the ground and the locomotive's rear platform connecting to the engine compartment. Amtrak acknowledges: "The parties agreed that the locomotive ladder is not specifically the subject of federal design regulations; switch engine stairs are.[9] The parties also did not dispute that the ladder Fontaine fell from was as designed and installed by the manufacturer of the locomotive."

An expert testified at trial: "[T]his ladder with a negative angle, in my opinion, is an unreasonable hazard; it's an unreasonable risk. [¶] I have never seen it, in my life, a ladder like this—that goes backwards. You're in essence—You know, if I want to get up there, you're climbing up this side of the ladder; it puts tremendous forces on our arms. So you're already starting out with a ladder that has this negative—put your rear end further out, arm motion, and that—so this, in my opinion, is defective, unreasonable risk, unsafe. . . . My opinion, the design of this ladder, and particularly with the lowering of the coefficient [referring to the presence of the oil], did constitute a dangerous and unsafe condition. It's an unreasonable risk."

---

[9]In contrast to locomotives, switch engines have stairs with rails.

Accordingly, the evidence demonstrated the ladder created an unnecessary peril in violation of the BIA.[10]

E. *"Sole Cause" Instruction\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II

### Damages

Amtrak raises two challenges with respect to damages, contending (1) the trial court erroneously denied an instruction on duty to mitigate and (2) the damages were excessive. We examine each contention in turn.

A. *Duty to Mitigate*

■ Amtrak argues it was "erroneously deprived" of a jury determination as to "whether Fontaine took reasonable steps to mitigate her past and future wage losses." However, the evidence was insufficient to support a mitigation of damages instruction.

After interviewing and testing Fontaine, a vocational rehabilitation counselor concurred with her decision to enter the field of journalism. Fontaine is enrolled in classes and expects to graduate in May 1998. Although Amtrak asserts the jury "could reasonably have concluded that Fontaine could easily have obtained alternate employment," Fontaine's expert characterized Amtrak's suggested alternatives of "public relations or political communications" as unreasonable or unavailable to Fontaine, and Amtrak offered no expert testimony in rebuttal.

"Having failed to present competent evidence at trial of the potential future wages available to [the plaintiff], [the railroad] cannot now complain on appeal that the jury failed to reduce [her] lost future earnings more than it did."[12] (*DeBiasio* v. *Illinois Cent. R.R.* (7th Cir. 1995) 52 F.3d 678, 688.)

[10]Amtrak also contends design may not constitute the basis for a BIA violation because this area is preempted by federal law. The case before us is founded entirely on federal law; no state statute is at issue, nor did Fontaine assert a state common law claim. Federal preemption is not at issue.

\*See footnote, *ante*, page 1519.

[12]In addition, as Fontaine notes, the mitigation of damages instruction proffered by Amtrak was incomplete. The jury instruction must make clear defendant bears the burden of proof of establishing the plaintiff has failed to mitigate damages. (*Jones* v. *Consolidated Rail Corp.* (6th Cir. 1986) 800 F.2d 590, 593-594.) Amtrak's mitigation instruction was silent as to the burden of proof.

B. *Excessiveness*

 Amtrak argues the jury's damages award was "affected by passion and prejudice. The award masquerades as compensatory damages but in fact is *punitive . . . .*" Amtrak goes on to mention jury awards of $665,466 and $768,889 as "examples of comparative jury awards for permanently disabled railroad workers." Accordingly, Amtrak argues, the trial court abused its discretion in denying Amtrak's motion for new trial based on excessive damages. We disagree.

Fontaine was 47 years old at the time of her injury. Her wrist bone was shattered into 60 pieces. She underwent surgery three times in the first two weeks, during which a metal frame was placed in her arm. She later underwent a fourth surgery to insert a larger, sturdier plate because the wrist bones did not rejoin. The doctor described Fontaine's condition as the "worst injury of its kind" he had ever seen, and the ultimate result was the shortening of Fontaine's left arm. Fontaine underwent a fifth surgery, and still has plates and screws in her arm. Her left arm is now merely a "helper"—she does not, and will not, have the ability fully to extend or raise it or to make a fist. She cannot dress or style her hair without assistance; she cannot sail, kayak, or play the piano or guitar anymore. She is in pain "constantly to some degree or another."

Amtrak acknowledges nearly $500,000 in economic damages: up to $416,000 in wages plus future medical costs, including a possible wrist fusion. This leaves approximately $1.5 million in noneconomic damages. In light of the evidence—five surgeries, permanent disability, inability to perform routine tasks without assistance, and constant pain—we cannot find the trial court abused its discretion in denying Amtrak's motion for new trial on the basis of excessive damages.[13]

### DISPOSITION

The judgment is affirmed. Fontaine shall recover her costs on appeal.

Sims, Acting P. J., and Davis, J., concurred.

---

[13]In light of our finding the record supports the jury's award of $1.5 million in noneconomic damages, we need not address Amtrak's contention counsel's closing argument improperly encouraged the jury to award punitive damages.